PC SCAN

RECEIVED
4/10/2019   PJ
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT



IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

FABIAN SANTIAGO

Vs.

James G. Fitzgerald Smith,
Terrence J. Lavin, Nathaniel
R. Howse. Individual & Offical
Capacities.

Civil No: 19-CV-455

Judge, John R. Blakey

Magistrate, Maria Valdez

PLAINTIFFS FIRST 1ST AMENDED COMPLAINT

venue

This is a federal civil rights action/complaint being executed pursuant to the civil rights act, title 42 § 1983 U.S. Code involving state employees acting under color of law or rather violation thereof.

PARTIES TO LITIGATION

Defendants, James G. Fitzgerald Smith, Terrence J. Lavin & Nathaniel R. Howse are employed as judges (sic) with the Il. State Appellate Court, First (1st) judicial District. Which is located @: 160 North. LaSalle Street, Room S1400, Chicago, Il. 60601.

JURISDICTION

The jurisdiction of this court is invoked & proper since the actions & controversies outlined throughout this action transpired within the Northern District of Il. pursuant to: 28 USC § 1331 (&) 1343(a)(3)

1 of 7

COUNT ONE

## VIOLATION OF THE PLAINTIFFS WELL ESTABLISHED RIGHT TO SELF-REPRESENTATION

1.) Upon the date of: March 16th, 2018, the cook county circuit court, via judge Nicholas R. Ford entered in a verdict rejecting the plaintiffs motion for a reduction in prison sentence. The plaintiff immediately submitted a notice of appeal to the county court, & a docketing statement unto the appellate court. The plaintiff ultimately received a correspondence from the appellate defenders (sic) office dated: June 13th, 2018, notifying the plaintiff that the appellate court had in fact appointed said office to represent (sic) the plaintiff. The plaintiff immediately moved with a submission/motion to proceed pro-se before the appellate court, which was in fact filed before the appellate court upon the date of: July 9th, 2018, & upon the date of: July 24th, 2018, the appellate court via defendants Smith, Lavin & Howse rejected the plaintiffs motion to proceed with self-representation. The plaintiff immediately moved to submit an objection opposing the appellate courts verdict denying the plaintiffs request to execute said litigation pro-se, which was in fact filed before the appellate court upon the date of: Sept. 14th, 2018.

2.) Upon the date of: Sept. 24th, 2018, the appellate court via defendant Lavin rejected the plaintiffs objection to the appellate courts refusal to allow the plaintiff to proceed with self-representation. Defendants Smith, Lavin & Howse never conducted a fitness evaluation in order to determine that the plaintiff was unfit to execute said litigation pro-se. The plaintiff never even so much as requested the appointment of counsel (sic) by the appellate court/defendants, & the plaintiff had fully appraised the court of the plaintiffs adament desire to proceed with self-representation - as the appellate defenders (sic) office had a long history of refusing to raise meritoreous claims before the court on the part of defendants, & thereby, waiving & defaulting upon critical claims & relief that an accused is entitled to. The plaintiff had even gone so far as to prepare an appellate court brief that the plaintiff was on standby to submit unto the appellate court & in which the appellate court was fully aware of.

3.) The plaintiff had/has a well established right to self-representation recognized by both the state & federal courts, yet defendants Smith, Lavin & Howse blatantly vioated the plaintiffs well established right & forcibly imposed legal representation (sic) upon the plaintiff, utterly violating the plaintiffs right to execute a cause of action pro-se, violating the plaintiffs rights to equal protection, the right to speak & be heard, the right to access to the courts & fair & adiquite due process of law under the 1st, 5th, 9th & 14th Amendment to the U.S. Constitution.

COUNT TWO

FRAUDULENT LEGAL REPRESENTATION BEING IMPOSED UPON PLAINTIFF

4.) The plaintiff never requested of the appellate court the appointment of counsel (sic) & in fact insisted upon executing the plaintiffs criminal court proceedings pro-se. Defendants Smith, Lavin & Howse never conducted a fitness hearing in order to determine whether the plaintiff was mentally competent to proceed with self-representation, & simply **forced** & coerced the plaintiff to except legal representation (sic) against the plaintiffs will. These unlawful abuses imposed against the plaintiff by defendants Smith, Lavin & Howse were not simply in violation of the plaintiffs well established right to execute a litigation (any cause of action) pro-se, but rather had a more sinister intent & purpose - as the legal representation (sic) that was imposed upon the plaintiff was an officer of the court & thereby, an agent of the government with a conflict of interest in representing the plaintiff. Said conflict of interest for the appointment of counsel (sic) was in no way shape or form disclosed unto the plaintiff.

5.) Any state & federal court (on any level of litigation) allowing the accused to proceed with re-tained counsel or appointing the accused counsel, has perpetrated an outright & calculating fraud & criminal conspiracy against the accused, knowing full well & being appraised of the fact that, attorneys @ law are un-equivocally officers of the courts (see: infra, page 3, 7 C.J.S., page 707 case law. Judges, prosecutors, pri-vate practice lawyers & court appointed counsel are attorneys @ law. The courts are empowered by respective Constitutions of the States of the Union (republic) (see: Constitution for the U.S. of America, Article-IV, Section 4). Therefore, if attorneys are "officers of the courts", then they are in fact, government agents. This fact is pointed out by Henry J. Friendly, in the University of Pennsylvania Law Review, Vol. 123, 1257, page 1288, which in part provides:

The appearance of counsel for the citizen is likely to lead the government to provide one or @ least to cause the governments representative to act like one. quite obviously, the alleged "defense counsel" is a government agent sitting @ the "defense table", not the accused guaranteed by the sixth (6th) Amendment effective assistance of counsel or guaranteed by the sixth (6th) Amendment "conflict free representation".

6.) The attorney (must) inform the accused of the limitations & conflict regarding his or her conduct (representation or assistance) (see: RPC, rule 1.2(e); RPC, rule 1.8(f) & ER-4; RPC, rule 1.7(a) (&) (b), ethicks rule 4, 5, 7 & 10). If an attorney is not allowed to disclose the conflict, he or she can not rightfully (morally or lawfully) ask the accused to agree to his or her representation, (RPC, rule 1, 7, ER-5), & must also have a release from the court & government allowing him or her to compromise the governments case. Further, given the conflict by being an officer of the court & a government agent, WHICH THE COURT IS WELL AWARE OF, IT IS THE COURTS DUTY TO INFORM THE ACCUSED OF SUCH A CONFLICT & INQUIRE IF THE ACCUSED, HAVING NOW BEEN INFORMED, VOLUNTARILY AGREES TO WAIVE THE CONFLICT.

7.) Never did defendants Smith, Lavin & Howse disclose & inform the plaintiff of the egregious conflict of interest that appointed counsel (sic) would have in undertaking legal representation (sic) of the plaintiffs criminal court proceedings & neither was the first (1st) district appellate defenders office allowed to inform the plaintiff of the serious & immediate conflict of interest that said attorneys @ the appellate defenders (sic) office would have in providing the plaintiff with legal representation (sic) while still functioning as agents for the very government in which indicted & sought the criminal prosecution of the plaintiff. Defendants Smith, Lavin & howse not only never notified the plaintiff of said conflict of interest that the appellate defenders (sic) office would have in providing the plaintiff with legal representation (sic), but deliberately maintained the plaintiff in the dark concerning the plaintiff having to consent to a release & waiver for said conflict of interest - before the appellate defenders (sic) office could LEGALLY undertake legal representation of the plaintiff.

8.) Ms. Patricia Mysza of the appellate defenders (sic) office refused to also disclosed this blatant & outrageous conflict of interest, as said public defender (sic) had not & could not obtain a release from both the court (defendants Smith, Lavin & Howse), as well as the government, in order to inform the plaintiff of this immediate conflict of interest & thereby compromising the governments case against the plaintiff. Defendants Smith, Lavin & howse were fully aware of the outrageous conflict of interest that the appellate defenders (sic) office had in undertaking legal representation of the plaintiff, refuse to allow the appellate defenders (sic) office to disclose said conflict of interest unto the plaintiff (&) never sought a release & waiver of the plaintiff pertaining to said conflict of interest. defendants Smith, Lavin & Howse engaged in said nafarious impropriety against the plaintiff with the intent of cullusion, fraud, & felonious activity that gave rise to nothing less than a criminal conspiracy against the plaintiff by said defendants in flagrantly violating the plaintiffs well established right to self-representation, the right to speak & be heard, equal protection of the laws, access to the courts, fair & adiquite due process of law in violation of the plaintiffs 1st, 5th, 9th, & 14th Amendment Rights under the U.S. Constitution.

9.) Defendants Smith, Lavin & Howse were all fully aware of the egregious conflict of interest a government agent would have in undertaking legal representation of the plaintiff, in this cause the appellate defenders (sic) office, & said defendants not only functioned in collusion to withold this conflict of interest from the plaintiff & obtain a release & waiver from the plaintiff as required.        but knowingly engaged in such reprehensible impropriety in order to allow a government agent to function as an imposter & legal representative (sic) of the plaintiff, while @ all times serving the interest of the government to infiltrate the plaintiffs criminal court proceedings & deny the plaintiffs most basic right to speak & even be heard - as a government operative & agent can not morally or legally speak upon the behalf of the plaintiff & truly represent the plaintiffs interest when such an abhorrent conflict of interest exist & has not been severed via a special appearance & plea: <u>IN PROPRIA PERSONA, I PLEA IN BAR CORAM NON JUDICE</u>. The plaintiffs well established right to self-representation was egregiously violated & demonstrated a violation in & of itself, yet was nevertheless met with additional aggravating factors by defendants Smith, Lavin & Howse allowing an agent of the government to function as legal counsel (sic) for the plaintiff despite the outlandlish conflict of interest.


## ABSOLUTE IMMUNITY INAPPLICABLE


10.) It is well settled that although a criminal defendant has a right to legal representation under the sixth (6th) & fourteenth (14) Amendment, it is unconstitutional to force an attorney upon a defendant whom insist to conduct his own defense. U.S. Vs. benefield, 942 F.2d 60 (1st Cir. 1991). The plaintiff simply can not be forced & coerced into excepting legal representation (especially one (1) with a conflict of interest), when the plaintiff has a well established right under both state & federal law to self-representation. Considering that the plaintiffs makes to contentions & has clearified that the plaintiffs criminal conviction/sentence are in no way shape or form being challenged, & therefore, remain undisturbed, & that, the plaintiffs right to self-representation was well established @ the time of the violations in question - defendants Smith, Lavin & Howse simply can not shield themselves with absolute immunity when blatantly violating the well established rights of the plaintiff. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. McGee Vs. snyder, second (2nd) dist. court of appeals, 8.29.01, 326 Ill.App.3d 343. When deciding whether government officals have qualified immunity against § 1983 claims, the court first (1st) will decide whether the particular offical violated the plaintiffs constitutional rights & subsequently will decide whether those rights were clearly established @ the time the officals acted.

11.) Government officals are shielded from liability, including § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which any reasonable person would have known. Murry Vs. Poani, fourth (4th) dist. court of appeals, 12.14.12, 2012 Ill.App. (4th) 120059. Although a prosecutor may strike hard blows, he is not @ liberty to strike foul ones. Berger Vs. U.S., 295 U.S. 78, 88 (1935). A prosecutors claim of ignorance as an excuse for compliance with Brady resembles a defendants claim of ignorance as an excuse to avoid criminal liabilty. U.S. Vs. Giovannetti, 919 F.2d 1223, 1228 (7th Cir. 1990). The qualified immunity doctrine assumes that state officals ARE AWARE OF EXISTING LAW, & holds officals liable only if they violate clearly established law & particularized rights. Wolf Vs. Kennelly, 574 F3d 406, on remand, 2010 WL 4134982. Civ.R. 1376(3). The qualified immunity doctrine shields a government actor from further litigation, unless the plaintiff can demonstrate (1) the violation of a constitutional right that is: (2) clearly established 2 the time of the violation, so that a reasonable public offical would have known that his conduct was unlawful. Bleavin Vs. Bartel, 422 F.3d 445 (7th Cir. 2005).


12.) The plaintiff has utilized the plaintiffs motion/objection to proceed pro-se, & defendants Smith, Lavin & Howse verdict in denying the plaintiffs request to execute the plaintiffs criminal court proceedings as evidence that the plaintiffs well established right to self-representation was blatantly violated by said defendants. The plaintiff does not set or is attempting to overturn or challenge defendants Smith, Lavin & Howse verdict against the plaintiff in said criminal court proceedings or obtain injunctive relief ONLY to demonstrate that the plaintiffs well established rights were violated pertaining to self-representation, which leaves the plaintiffs underlining criminal conviction/sentence uneffected & undisturbed.


## RELIEF BEING REQUESTED


A.) The plaintiff is seeking unspecified damage awards to be determined @ a jury trial.


## CERTIFICATION


I, FABIAN SANTIAGO, Certify that the facts stated in this instant amended complaint are both true & correct to the best of my knowledge & recollection pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109. I understand that if this certification is not correct, I may be subject to sanctions by the court.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

FABIAN SANTIAGO

    Vs.

James G. Fitzgerald Smith,
Terrence J. Lavin, Nathaniel
R. Howse. Individual & Offical
Capacities.

Civil No: 19-CV-455

Judge, John R. Blakey

Magistrate, Maria Valdez

PLAINTIFFS FIRST 1ST AMENDED COMPLAINT

venue

    This is a federal civil rights action/complaint being executed pursuant to the civil rights act, title 42 § 1983 U.S. Code involving state employees acting under color of law or rather violation thereof.

PARTIES TO LITIGATION

    Defendants, James G. Fitzgerald Smith, Terrence J. Lavin & Nathaniel R. Howse are employed as judges (sic) with the Il. State Appellate Court, First (1st) judicial District. Which is located @: 160 North. LaSalle Street, Room S1400, Chicago, Il. 60601.

JURISDICTION

    The jurisdiction of this court is invoked & proper since the actions & controversies outlined throughout this action transpired within the Northern District of Il. pursuant to: 28 USC § 1331 (&) 1343(a)(3)

1 of 7

COUNT ONE

VIOLATION OF THE PLAINTIFFS WELL ESTABLISHED RIGHT TO SELF-REPRESENTATION

1.) Upon the date of: March 16th, 2018, the cook county circuit court, via judge Nicholas R. Ford entered in a verdict rejecting the plaintiffs motion for a reduction in prison sentence. The plaintiff immediately submitted a notice of appeal to the county court, & a docketing statement unto the appellate court. The plaintiff ultimately received a correspondence from the appellate defenders (sic) office dated: June 13th, 2018, notifying the plaintiff that the appellate court had in fact appointed said office to represent (sic) the plaintiff. The plaintiff immediately moved with a submission/motion to proceed pro-se before the appellate court, which was in fact filed before the appellate court upon the date of: July 9th, 2018, & upon the date of: July 24th, 2018, the appellate court via defendants Smith, Lavin & Howse rejected the plaintiffs motion to proceed with self-representation. The plaintiff immediately moved to submit an objection opposing the appellate courts verdict denying the plaintiffs request to execute said litigation pro-se, which was in fact filed before the appellate court upon the date of: Sept. 14th, 2018.

2.) Upon the date of: Sept. 24th, 2018, the appellate court via defendant Lavin rejected the plaintiffs objection to the appellate courts refusal to allow the plaintiff to proceed with self-representation. Defendants Smith, Lavin & Howse never conducted a fitness evaluation in order to determine that the plaintiff was unfit to execute said litigation pro-se. The plaintiff never even so much as requested the appointment of counsel. (sic) by the appellate court/defendants, & the plaintiff had fully appraised the court of the plaintiffs adamant desire to proceed with self-representation - as the appellate defenders (sic) office had a long history of refusing to raise meritoreous claims before the court on the part of defendants, & thereby, waiving & defaulting upon critical claims & relief that an accused is entitled to. The plaintiff had even gone so far as to prepare an appellate court brief that the plaintiff was on standby to submit unto the appellate court & in which the appellate court was fully aware of.

3.) The plaintiff had/has a well established right to self-representation recognized by both the state & federal courts, yet defendants Smith, Lavin & Howse blatantly violated the plaintiffs well established right & forcibly imposed legal representation (sic) upon the plaintiff, utterly violating the plaintiffs right to execute a cause of action pro-se, violating the plaintiffs rights to equal protection, the right to speak & be heard, the right to access to the courts & fair & adiquite due process of law under the 1st, 5th, 9th & 14th Amendment to the U.S. Constitution.

COUNT TWO

FRAUDULENT LEGAL REPRESENTATION BEING IMPOSED UPON PLAINTIFF

4.) The plaintiff never requested of the appellate court the appointment of counsel. (sic) & in fact insisted upon executing the plaintiffs criminal court proceedings pro-se. Defendants Smith, Lavin & House never conducted a fitness hearing in order to determine whether the plaintiff was mentally competent to proceed with self-representation, & simply **forced** & coerced the plaintiff to except legal representation (sic) against the plaintiffs will. These unlawful abuses imposed against the plaintiff by defendants Smith, Lavin & House were not simply in violation of the plaintiffs well established right to execute a litigation (any cause of action) pro-se, but rather had a more sinister intent & purpose - as the legal representation (sic) that was imposed upon the plaintiff was an officer of the court & thereby, an agent of the government with a conflict of interest in representing the plaintiff. Said conflict of interest for the appointment of counsel (sic) was in no way shape or form disclosed unto the plaintiff.

5.) Any state & federal court (on any level of litigation) allowing the accused to proceed with re-tained counsel or appointing the accused counsel, has perpetrated an outright & calculating fraud & criminal conspiracy against the accused, knowing full well & being appraised of the fact that, attorneys @ law are un-equivocally officers of the courts (see: infra, page 3, 7 C.J.S., page 707 case law. Judges, prosecutors, pri-vate practice lawyers & court appointed counsel are attorneys @ law. The courts are empowered by respective Constitutions of the States of the Union (republic) (see: Constitution for the U.S. of America, Article-IV, Section 4). Therefore, if attorneys are "officers of the courts", then they are in fact, government agents. This fact is pointed out by Henry J. Friendly, in the University of Pennsylvania Law Review, Vol. 123, 1267, page 1288, which in part provides:

The appearance of counsel for the citizen is likely to lead the government to provide one or @ least to cause the governments representative to act like one. quite obviously, the alleged "defense counsel" is a government agent sitting @ the "defense table", not the accused guaranteed by the sixth (6th) Amendment effective assistance of counsel or guaranteed by the sixth (6th) Amendment "conflict free representation".

6.) The attorney (must) inform the accused of the limitations & conflict regarding his or her conduct (representation or assistance) (see: RPC, rule 1.2(e); RPC, rule 1.8(f) & ER-4; RPC, rule 1.7(a) (&) (b), ethicks rule 4, 5, 7 & 10). If an attorney is not allowed to disclose the conflict, he or she can not rightfully (morally or lawfully) ask the accused to agree to his or her representation, (RPC, rule 1, 7, ER-5), & must also have a release from the court & government allowing him or her to compromise the governments case. Further, given the conflict by being an officer of the court & a government agent, WHICH THE COURT IS WELL AWARE OF, IT IS THE COURTS DUTY TO INFORM THE ACCUSED OF SUCH A CONFLICT & INQUIRE IF THE ACCUSED, HAVING NOW BEEN INFORMED, VOLUNTARILY AGREES TO WAIVE THE CONFLICT.

7.) Never did defendants Smith, Lavin & Howse disclose & inform the plaintiff of the egregious conflict of interest that appointed counsel. (sic) would have in undertaking legal representation (sic) of the plaintiffs criminal court proceedings & neither was the first (1st) district appellate defenders office allowed to inform the plaintiff of the serious & immediate conflict of interest that said attorneys @ the appellate defenders (sic) office would have in providing the plaintiff with legal representation (sic) while still functioning as agents for the very government in which indicted & sought the criminal prosecution of the plaintiff. Defendants Smith, Lavin & howse not only never notified the plaintiff of said conflict of interest that the appellate defenders (sic) office would have in providing the plaintiff with legal representation (sic), but deliberately maintained the plaintiff in the dark concerning the plaintiff having to consent to a release & waiver for said conflict of interest - before the appellate defenders (sic) office could LEGALLY undertake legal representation of the plaintiff.

8.) Ms,Patricia Mysza of the appellate defenders (sic) office refused to also disclosed this blatant & outrageous conflict of interest, as said public defender (sic) had not & could not obtain a release from both the court (defendants Smith, Lavin & Howse), as well as the government, in order to inform the plaintiff of this immediate conflict of interest & thereby compromising the governments case against the plaintiff. Defendants Smith, Lavin & howse were fully aware of the outrageous conflict of interest that the appellate defenders (sic) office had in undertaking legal representation of the plaintiff, refuse to allow the appellate defenders (sic) office to disclose said conflict of interest unto the plaintiff (&) never sought a release & waiver of the plaintiff pertaining to said conflict of interest. defendants Smith, Lavin & Howse engaged in said nafarious impropriety against the plaintiff with the intent of cullusion, fraud, & felonious activity that gave rise to nothing less than a criminal conspiracy against the plaintiff by said defendants in flagcantly violating the plaintiffs well established right to self-representation, the right to speak & be heard, equal protection of the laws, access to the courts, fair & adiquite due process of law in violation of the plaintiffs 1st, 5th, 9th, & 14th Amendment Rights under the U.S. Constitution.

9.) Defendants Smith, Lavin & Howse were all fully aware of the egregious conflict of interest a government agent would have in undertaking legal representation of the plaintiff, in this cause the appellate defenders (sic) office, & said defendants not only functioned in collusion to withold this conflict of interest from the plaintiff & obtain a release & waiver from the plaintiff as required.        but knowingly engaged in such reprehensible impropriety in order to allow a government agent to function as an imposter & legal representative (sic) of the plaintiff, while @ all times serving the interest of the government to infiltrate the plaintiffs criminal court proceedings & deny the plaintiffs most basic right to speak & even be heard - as a government operative & agent can not morally or legally speak upon the behalf of the plaintiff & truly represent the plaintiffs interest when such an abhorrent conflict of interest exist & has not been severed via a special appearance & plea: IN PROPRIA PERSONA, I PLEA IN BAR CORAM NON JUDICE. The plaintiffs well established right to self-representation was egregiously violated & demonstrated a violation in & of itself, yet was nevertheless met with additional aggravating factors by defendants Smith, Lavin & Howse allowing an agent of the government to function as legal counsel (sic) for the plaintiff despite the outlandish conflict of interest.

## ABSOLUTE IMMUNITY INAPPLICABLE

10.) It is well settled that although a criminal defendant has a right to legal representation under the sixth (6th) & fourteenth (14) Amendment, it is unconstitutional to force an attorney upon a defendant whom insist to conduct his own defense. U.S. Vs. benefield, 942 F.2d 60 (1st Cir. 1991). The plaintiff simply can not be forced & coerced into excepting legal representation (especially one (1) with a conflict of interest), when the plaintiff has a well established right under both state & federal law to self-representation. Considering that the plaintiffs makes to contentions & has clearified that the plaintiffs criminal conviction/sentence are in no way shape or form being challenged, & therefore, remain undisturbed, & that, the plaintiffs right to self-representation was well established @ the time of the violations in question - defendants Smith, Lavin & Howse simply can not shield themselves with absolute immunity when blatantly violating the well established rights of the plaintiff. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. McGee Vs. snyder, second (2nd) dist. court of appeals, 8.29.01, 326 Ill.App.3d 343. When deciding whether government officals have qualified immunity against § 1983 claims, the court first (1st) will decide whether the particular offical violated the plaintiffs constitutional rights & subsequently will decide whether those rights were clearly established @ the time the officals acted.

11.) Government officals are shielded from liability, including § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which any reasonable person would have known. Murry Vs. Poani, fourth (4th) dist. court of appeals, 12.14.12, 2012 Ill.App. (4th) 120059. Although a prosecutor may strike hard blows, he is not @ liberty to stike foul ones. Berger Vs. U.S., 295 U.S. 78, 88 (1935). A prosecutors claim of ignorance as an excuse for compliance with Brady resembles a defendants claim of ignorance as an excuse to avoid criminal liability. U.S. Vs. Gievannetti, 919 F.2d 1223, **1228** (7th Cir. 1990). The qualified immunity doctrine assumes that state officals ARE AWARE OF EXISTING LAW, & holds officals liable only if they violate clearly established law & particularized rights. Wolf Vs. Kennelly, 574 F3d 406, on remand, 2010 WL 4134982. Civ.R. 1376(3). The qualified immunity doctrine shields a government actor from further litigation, unless the plaintiff can demonstrate (1) the violation of a constitutional right that is: (2) clearly established 2 the time of the violation, so that a reasonable public offical would have known that his conduct was unlawful. Bleavin Vs. Bartel, 422 F.3d 445 (7th Cir. 2005).

**12.)** The plaintiff has utilized the plaintiffs motion/objection to proceed pro-se, & defendants Smith, Lavin & Howse verdict in denying the plaintiffs request to execute the plaintiffs criminal court proceedings as evidence that the plaintiffs well established right to self-representation was blatantly violated by said defendants. The plaintiff does not set or is attempting to overturn or challenge defendants Smith, Lavin & Howse verdict against the plaintiff in said criminal court proceedings or obtain injunctive relief ONLY to demonstrate that the plaintiffs well established rights were violated **pertaining** to self-representation, which leaves the plaintiffs underlining criminal conviction/sentence uneffected & undisturbed.

<u>RELIEF BEING REQUESTED</u>

A.) The plaintiff is seeking unspecified damage awards to be determined @ a jury trial.

<u>CERTIFICATION</u>

I, FABIAN SANTIAGO, Certify that the facts stated in this instant amended complaint are both true & correct to the best of my knowledge & recollection pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109. I understand that if this certification is not correct, I may be subject to sanctions by the court.

Wherefore, The Plaintiff, FABIAN SANTIAGO, Moves before the USDG-NDIL & request to be allowed to proceed with any & all claims outlined & contained within this amended complaint, & direct the U.S. Marshal Service to execute service upon the listed defendants listed throughout this cause of action.

<u>THE PLAINTIFF IS DEMANDING A TRIAL BY JURY</u>

/s/ _____

Without Prejudice, Unified Commercial Code, 1-308
MR.FABIAN SANTIAGO. #B-79716
600 South. Linwood Road
Po Box 1700
Galesburg, Illinois 61402

State of Illinois )
                  ) SS
County of Knox    )

Signed & attested to before me upon this:

10th _____, day of: April, 2019.of Fabian Santiago.

/s/ _____
    Notary Public

SALLY A HUFFER
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
December 26, 2022

EXHIBIT (A)

List of 3 headnotes for (1) In general

**(1) In general** (3)
Jurisdiction: Illinois State

78 CIVIL RIGHTS  2,837
  78III Federal Remedies in General  449
    78☰1372 Privilege or Immunity; Good Faith and Probable Cause  63
      78☰1376 Government Agencies and Officers  58
        78☰1376(1) In general.  3

**1. Redwood v. Lierman**
Appellate Court of Illinois, Fourth District.  June 7, 2002  331 Ill.App.3d 1073
**Headnote:**  When deciding whether governmental officials have qualified immunity against §1983 claims, courts first will decide whether particular officials have violated the plaintiff's constitutional rights, and subsequently will decide whether those rights were clearly established at the time the official acted. 42 U.S.C.A. §1983.

**Document Preview:**  CIVIL RIGHTS - Due Process. Village was required to afford homeowner notice an hearing before seizing vehicle from her residence.

**2. Aboufariss v. City of De Kalb**
Appellate Court of Illinois, Second District.  July 7, 1999  305 Ill.App.3d 1054
**Headnote:**  In actions brought against governmental officials pursuant to §1983, governmental officials may raise qualified immunity as an affirmative defense. 42 U.S.C.A. §1983.

1 Case that cites this legal issue
**Document Preview:**  TORTS - Malicious Prosecution. Police officer had probable cause to believe that arrestee committed child abduction.

**3. Anderson v. Village of Forest Park**
Appellate Court of Illinois, First District, Third Division.  October 28, 1992  238 Ill.App.3d 83
**Headnote:**  Even if Tort Immunity Act technically covers §1983 claims, Tort Immunity Act does not apply to §1983 claims under supremacy clause of the United States Constitution. 42 U.S.C.A. §1983; S.H.A. ch. 85, ¶¶1-204, 2-201; U.S.C.A. Const. Art. 6, cl. 2.

12 Cases that cite this legal issue
**Document Preview:**  CIVIL RIGHTS - Mental Health. Ruling on qualified immunity defense was premature.

List of 20 headnotes for (2) Good faith and reasonableness;  knowled...

**(2) Good faith and reasonableness; knowledge and clarity of law; motive and intent, in general** (20)
Jurisdiction: Illinois State

78 CIVIL RIGHTS  2,837
  78III Federal Remedies in General  449
    78 1372 Privilege or Immunity; Good Faith and Probable Cause  63
     78 1376 Government Agencies and Officers  58
      78 1376(2) Good faith and reasonableness; knowledge and clarity of law; motive and intent, in general.  20

- **1. Murray v. Poani**
Appellate Court of Illinois, Fourth District.  December 14, 2012  2012 IL App (4th) 120059
Headnote:  "Clearly established," for purposes of qualified immunity, means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. 42 U.S.C.A. §1983.

  **Document Preview:**  CIVIL RIGHTS - Immunity. Triable issues as to whether officer exceeded peacekeeper role in a private repossession precluded summary judgment.

**2. Murray v. Poani**
Appellate Court of Illinois, Fourth District.  December 14, 2012  2012 IL App (4th) 120059
Headnote:  Earlier cases need not involve fundamentally similar or materially similar facts for officials to be on notice that their conduct violates clearly established law and thus is not protected by qualified immunity. 42 U.S.C.A. §1983.

  **Document Preview:**  CIVIL RIGHTS - Immunity. Triable issues as to whether officer exceeded peacekeeper role in a private repossession precluded summary judgment.

**3. Schlicher v. Board of Fire and Police Com'rs of Village of Westmont**
Appellate Court of Illinois, Second District.  March 6, 2006  363 Ill.App.3d 869
Headnote:  When sued in their individual capacities, government officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages, including claims under §1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. 42 U.S.C.A. §1983.

  **Document Preview:**  CIVIL RIGHTS - Immunity. Public officials were not entitled to qualified immunity on a police officer's First Amendment retaliation claim.

**4. Fabiano v. City of Palos Hills**

Case: 1:19-cv-00455 Document #: 12 Filed: 04/10/19 Page 17 of 36 PageID #:199

List of 20 headnotes for (2) Good faith and reasonableness;  knowled...

### 8. McGee v. Snyder
Appellate Court of Illinois, Second District.    August 29, 2001    326 Ill.App.3d 343
**Headnote:**   In determining whether an official's conduct violated a clearly established constitutional or statutory right, thus rendering the official ineligible for qualified immunity, the official's conduct must be assessed in light of the law that was clearly established at the time of the complained-of conduct.

**Document Preview:**   CRIMINAL JUSTICE - Sentencing. Inmates stated claim for ex post facto violation based on retroactive application of sentencing law.

### 9. McGee v. Snyder
Appellate Court of Illinois, Second District.    August 29, 2001    326 Ill.App.3d 343
**Headnote:**   In determining whether an official is entitled to qualified immunity, the pertinent inquiry is whether, given the state of the law at the time of the act, a reasonable official would have understood that the act violated some constitutional or statutory right.

**Document Preview:**   CRIMINAL JUSTICE - Sentencing. Inmates stated claim for ex post facto violation based on retroactive application of sentencing law.

### 10. McGee v. Snyder
Appellate Court of Illinois, Second District.    August 29, 2001    326 Ill.App.3d 343
**Headnote:**   Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

**Document Preview:**   CRIMINAL JUSTICE - Sentencing. Inmates stated claim for ex post facto violation based on retroactive application of sentencing law.

### 11. Aboufariss v. City of De Kalb
Appellate Court of Illinois, Second District.    July 7, 1999    305 Ill.App.3d 1054
**Headnote:**   Generally, governmental officials who perform discretionary functions are protected against civil liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.

2 Cases that cite this legal issue
**Document Preview:**   TORTS - Malicious Prosecution. Police officer had probable cause to believe that arrestee committed child abduction.

### 12. Aboufariss v. City of De Kalb
Appellate Court of Illinois, Second District.    July 7, 1999    305 Ill.App.3d 1054

List of 20 headnotes for (2) Good faith and reasonableness;  knowled...

**Headnote:** If law was clearly established, then qualified immunity defense to §1983 claims should fail, barring extraordinary circumstances and proof that official neither knew nor should have known of relevant legal standard, because reasonably competent public official should know law governing his conduct. 42 U.S.C.A. §1983.

**Document Preview:** CIVIL RIGHTS - Mental Health. Ruling on qualified immunity defense was premature.

### 17. Fulk v. Roberts

Appellate Court of Illinois, Fifth District.     November 9, 1987    164 Ill.App.3d 194

**Headnote:** Governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

1 Case that cites this legal issue

**Document Preview:** Detainee brought action against game wardens under civil rights statute and under common law on theory of unlawful detention. After remand by the Appellate Court, the Circuit Court, Perry County, Robert Bastien, J., entered judgment in favor of detainee. Wardens appealed. The Appellate Court, Lewis, J., held that: (1) game wardens had sufficient cause to conduct brief investigatory stop of detainee, and thus, were not liable for damages, and (2) detainee suffered no injury which would have entitled him to damages. Reversed.

### 18. Fulk v. Roberts

Appellate Court of Illinois, Fifth District.     November 9, 1987    164 Ill.App.3d 194

**Headnote:** Game wardens were entitled to qualified immunity from liability in civil rights action brought by detainee; wardens had sufficient cause to conduct brief investigatory stop to confirm or allay their suspicions that detainee was using a spotlight to violate wildlife code by "shining" for deer. 42 U.S.C.A. §1983; S.H.A. ch. 61, ¶1.1 et seq.

3 Cases that cite this legal issue

**Document Preview:** Detainee brought action against game wardens under civil rights statute and under common law on theory of unlawful detention. After remand by the Appellate Court, the Circuit Court, Perry County, Robert Bastien, J., entered judgment in favor of detainee. Wardens appealed. The Appellate Court, Lewis, J., held that: (1) game wardens had sufficient cause to conduct brief investigatory stop of detainee, and thus, were not liable for damages, and (2) detainee suffered no injury which would have entitled him to damages. Reversed.

### 19. Valdez v. City of Ottawa

Appellate Court of Illinois, Third District.     April 22, 1982    105 Ill.App.3d 972

**Headnote:** Individual defendants can assert qualified immunity in federal civil rights action only by showing they acted in good faith and with probable cause. 42 U.S.C.A. §1983.

**Document Preview:** Automobile owners brought action against city, police officer, and proprietors of towing company, alleging that they denied owners due process when they seized and destroyed owners' automobile,

does not vio-
r constitutional
n would have
—Wells v. City
ivil R 1376(2).

rine of "quali-
villy liable un-
iolated clearly
onal rights of
position would
not show both
l be dismissed.
. Village of
il R 1376(2).

nity" protects
1983 to extent
ly have been
are alleged to
3.—Aleman v.
pp.2d 869, af-
62 F.3d 897,
133 S.Ct. 26,
il R 1376(2).

nity" protects
discretionary
83 insofar as
ly established
which reason-
42 U.S.C.A.
upp.2d 1027,
78 F.3d 500,
remand 2012
L 6727243.—

ty" should be
cials' conduct
statutory or
nable person
1983.—Pat-
p.2d 1039.—

ified immuni-
st suits aris-
ary functions
onably have
they are al-
Trotter, 645
eration 2011

nity" is de-
from liability
uct does not
or constitu-
rson would
hicago, 635
/L 2599756,
F.3d 626.—

y" protects
e law is not
ial to have

known that her actions were illegal.—Zboralski v. Monahan, 616 F.Supp.2d 792.—Civil R 1376(2).

N.D.Ill. 2008. "Qualified immunity" is defense available to government officials performing discretionary functions that affords them protection from civil liability.—LaFlamboy v. Landek, 587 F.Supp.2d 914.—Pub Emp 900.

## QUALIFIED IMMUNITY DOCTRINE

C.A.7 (Ill.) 2009. The "qualified immunity doctrine" assumes that state officials are aware of existing case law and holds officials liable only if they violate clearly established and particularized rights.—Wolf v. Kennelly, 574 F.3d 406, on remand 2010 WL 4134982.—Civil R 1376(3).

C.D.Ill. 2014. Under "qualified immunity doctrine," government officials are entitled to protection from damages liability under §1983 if their conduct does not violate clearly established statutory or constitutional rights of which reasonable person would have known. 42 U.S.C.A. § 1983—Beaman v. Souk, 7 F.Supp.3d 805.—Civil R 1376(2).

N.D.Ill. 2014. "Qualified immunity doctrine" protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.—Spalding v. City of Chicago, 24 F.Supp.3d 765.—Civil R 1376(2).

## QUALIFIED INDIVIDUAL

C.A.7 (Ill.) 2018. Medical resident was not a "qualified individual" within meaning of ADA, since he could not perform an essential function for a third-year resident at employer hospital, thus precluding his ADA disability discrimination claim against hospital arising out his resignation in lieu of termination after hospital had learned that he had failed, for a third time, exam that was prerequisite for obtaining license to practice medicine in the United States; passing the exam was an essential function, as hospital, in its judgment as employer, considered passage of the test essential to resident's medical training, and by not passing the exam, resident was not eligible to become a licensed physician and could not take the Family Medicine residency program. Americans with Disabilities Act of 1990 § 101, 42 U.S.C.A. § 12111(8).—Rodrigo v. Carle Foundation Hospital, 879 F.3d 236.—Civil R 1218(4).

C.A.7 (Ill.) 2015. Airline employee established that he was a "qualified individual" with a disability within meaning of ADA; employee's inability as result of work-related back injuries to lift more than 30 pounds prevented him from performing without accommodation essential functions of his ramp serviceman position, which included lifting more than 70 pounds, but he could perform essential functions of position with reasonable ac-

commodation insofar as he was transferred to, and successfully held for over five years, a "Matrix" position involving sitting at computer next to conveyor belt, scanning tags on luggage coming on conveyor belt, and then processing scans on computer. Americans with Disabilities Act of 1990, §§ 101(8), 102(a), 42 U.S.C.A. §§ 12111(8), 12112(a).—Dunderdale v. United Airlines, Inc., 807 F.3d 849, certiorari denied 136 S.Ct. 2399, 195 L.Ed.2d 764.—Civil R 1218(4).

C.A.7 (Ill.) 2015. Employee was not a "qualified individual" with a disability, as required for ADA failure-to-accommodate claim based on employer's denial of his request for transfer to a different location, made when he was out on FMLA medical leave; employee was unable to work at time he requested transfer and therefore could not perform the essential functions of his position. Americans with Disabilities Act of 1990, §§ 101(8), 102(a), (b)(5)(A), 42 U.S.C.A. §§ 12111(8), 12112(a), (b)(5)(A).—Curtis v. Costco Wholesale Corp., 807 F.3d 215.—Civil R 1218(4), 1225(3).

N.D.Ill. 2016. Fact that disabled employee of Chicago Transit Authority (CTA) could not legally operate truck in Illinois while taking narcotic pain medications precluded employee from performing essential duties of his truck chauffeur position, such that employee was not "qualified individual" under ADA; doctor never cleared employee to return to work, and driving truck was essential function of being truck driver. Americans with Disabilities Act of 1990 § 102, 42 U.S.C.A. § 12112(a); 625 Ill. Comp. Stat. Ann. § 5/18b-105; 49 C.F.R. § 391.41(b)(12)(i); Ill. Admin. Code tit. 92, § 391.2000.—Arce v. Chicago Transit Authority, 193 F.Supp.3d 875.—Civil R 1218(4).

N.D.Ill. 2010. State employee failed to establish that he was a "qualified individual" under Americans with Disabilities Act (ADA) since he could not perform the essential functions of his position with or without an accommodation. Americans with Disabilities Act of 1990, § 102(a), 42 U.S.C.A. § 12112(a).—Ramirez v. Illinois Dept. of Human Services, 711 F.Supp.2d 853.—Civil R 1218(4).

## QUALIFIED INDIVIDUAL WITH A DISABILITY

C.A.7 (Ill.) 2012. Housekeeping assistant at hospital was not "qualified individual with a disability" after she went on medical leave of absence because of her asthma, and thus hospital's failure to accommodate her asthma did not violate ADA, where employee's work restrictions kept her away from dust and chemicals, prevented her from mopping floors and lifting significant weight, and kept her from pushing her housekeeping cart. Americans with Disabilities Act of 1990, § 101(8), 42 U.S.C.A. § 12111(8).—Teague v. Northwestern Memorial Hosp., 492 Fed.Appx. 680.—Civil R 1218(4).

EXHIBIT (B)

(f)      A lawyer **shall not** ([mandatory] emphasis added) accept compensation for representing a client <u>from one other than the client</u> (emphasis added) unless: (1) **The client consents after consultation**; (2) **there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship**. ([Mandatory] emphasis added).

[ER-4] Paragraph (f) requires disclosure of the fact that the lawyer's services are being paid for by a third party. **Such an arrangement must also conform to...Rule 1.7 concerning conflict of interest**. ([mandatory] emphasis added).

Rule 1.7(a)(1) and [ER-3] provides:

(1)      **A lawyer shall not represent a client if the representation will be directly adverse to another client,** ([mandatory] emphasis added) unless: (2) **each client consents after consultation.** ([mandatory] emphasis added)

[ER-3] As a general proposition, **loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent**. (emphasis added).

7 C.J.S. Attorney Client, page 707—case law cited shows:

First duty not to client, "counsel must remember that they too, are officers of the court, administrators of justice, oath-bound servants of society; that their first duty is not to their clients, as many suppose, but is to the administration of justice; that their client's success is wholly subordinate; **U.S. v. Frank**, 53 F.2d 128, 129, reversed on other grounds; **U.S. v. Loughlin**, 57 F.2d 1080, Reversed on other grounds; **Pearse v. U.S.,** 59 F.2d 518; **In re Kelly**, 243 F. 696, 705.

In case of conflict between attorney's duty to client and that to court, his duty to the court must prevail. **State v. Barto**, 232 N.W. 553, 202 Wis. 329.

This is the basis for the release shown to be necessary at 7 C.J.S. Attorney client, § 105(d). Rule 1.7 Ethich Rules continue with:

[ER-4] Loyalty to a client is so impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client **because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client.** (emphasis added).

Just such a conflict is pleadings which may be made. One such pleading is "in propria persona", which is defined by BLACK'S LAW DICTIONARY:

FIFTH EDITION, at page 712: ...a rule in pleading that pleas to the jurisdiction of the court mus be plead *in propria persona*, because if pleaded by an attorney they admit the jurisdiction, as an attorney is an officer of the court, and he is presumed to plead after having

1 of 6

obtained leave, which admits the jurisdiction.

Rule 1.7, ER-S provides:

A client may consent to representation notwithstanding a conflict. However, as indicated in paragraph (a) (1) and paragraph (b) (1) with respect to material limitations on the representation of a client, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask such agreement or provide representation on the basis of the client's consent. When more than one client is involved, the question of conflict must be resolved as to each client. ([mandatory] emphasis added) . Moreover, there may be circumstances where it is impossible to make the disclosure necessary to obtain consent. For example, when lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent. (emphasis added).

while ER-10 provides:

A lawyer may be paid from a source other than the client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty to the client. See, Rule 1.8(f). (emphasis added).

and ER-7 provides:

Paragraph (a) prohibits representation of opposing parties in litigation.

and Rule 1.2(e) provides:

When a lawyer knows that a client expects assistance not permitted by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct. ([Mandatory] emphasis added)

Attorney's at Law are considered "officers of the courts" (See: infra, page 3, 7 C.J.S., page 707 case law). Judges, prosecutors and private practice lawyers are Attorneys at Law. The courts are empowered by respective Constitutions of the States of the Union (Republic) (see: Constitution for the United States of America, Article IV, Section 4). Therefore, if Attorneys are "officers of the court," then they are, in fact, government agents. This fact was pointed out by Henry J. Friendly, in University of Pennsylvania Law Review, Vol. 123, 1267, page 1288, which in part provides:

The appearance of counsel for the citizen is likely to lead the government to

$2\ \overline{0}7\ 6$

provide one - or at least to cause the government's representative to act like one. (emphasis added).

Quite obviously, the alleged "Defense Counsel" is a government agent sitting at the "Defense Table", not the "accused(s)" "guaranteed by the Sixth Amendment" "effective assistance of counsel", or "guaranteed by the Sixth Amendment" "conflict-free representation".

Right to conflict-free representation(emphasis added) derives from Sixth Amendment. **Garcia v. Bunnell**, 33 F.3d 1193 (9th Cir. 1994)

Criminal defendant is entitled to counsel whose undivided loyalties lie with client. (not the government) **Spreitzer v. Peters**, 114 F.3d 1435 (7th Cir. 1997).

The Attorney must inform the accused of the limitations and conflicts regarding his or her conduct (representation or assistance) (see. RPC, Rule 1.2(e); RPC, Rule 1.8(f) & ER-4; RPC, Rule 1.7(a) & (b), Ethicks Rules 4, 5, 7, & 10). If the lawyer is not allowed to disclose the conflicts, he or she cannot rightfully (morally or lawfully) ask the accused to agree to his or her representation, (RPC, Rule 1.7, ER-5), and must also have a release from the court and the government allowing him or her to compromise the government's case. Further, given the conflict caused by being an officer of the court and a government agent, which the court is well aware of, it is the courts duty to inform the duty of the court to inform the accused of such conflict and inquire if the accused, having now been informed, voluntarily agrees to waive the conflicts.

District court's initial obligation to inquire into potential conflict of interest arises whenever district court is sufficiently apprised of even possibility of conflict of interest. **U.S. v. Jiang**, 140 F.3d 124 (2nd Cir. 1998); **U.S. v. Taylor**, 139 F.Jd 924 (D.C. Cir. 1998)

Trial judges are required to determine whether third parties are paying fees of retained counsel when defendant is indigent, and, if so, whether defendant understands potential conflict of interest that may exist in such arrangement and voluntarily waives conflict. **Quintero v. United States,** 33 F.3d 1133 (9th Cir. 1994).

A lawyer cannot be compelled to "Represent" an accused, see, e.g., **Mallard v. U.S.**

3 of 6

**Dist. Court for S. Pist. of Iowa,** 490 U.S. 296, 104 L.Ed.2d 318, 109 S.Ct. 1814 (1989). Representation that would be impaired by influence of a third party must be declined, See, e.g. **United States v. Locassio**, 6 F.3d 924 (2nd cir. 1993), where "acceptance of fee from third party could subject lawyer to undesirable outside influence, particularly in criminal matters," cert. denied, 511 U.S. 1070 (1994); **In re Grand Jury Subpoena**, 759 F.2d 968, 977, 984 n.9 (2nd Cir. 1985), where "[a]ccepting payment of clients' fees from third party may subject an attorney to undesirable outside influence, particularly where the attorney is representing clients in criminal matters...."; **United States v. Rodriquez**, 929 F.2d 747 (1st Cir. 1991), where: law under fee-payment scheme may inhibit "client" from offering testimony or taking action contrary to fee payer's interest; **Wood v. Georgia**, 450 U.S. 261, 269 (1981), where "[c]ourts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party,...."; see generally: Roszkewycz, **Third Part Payment of Criminal Defense Fees: What Lawyers Should Tell Potential Clients and Their Benefactors pursuant to (an amended) Model Rule 1.8(f), 7 Geo. J. Legal Ethics 573 (1993).**

Law firm that represents operating division of chemical and film manufacturer cannot represent another client in antitrust litigation against manufacturer without written informed consent of both clients. (emphasis added). **Image Technical Services, Inc. v. Eastman Kodak Co.**, 820 F.Supp. 1212 (N.D. Cal. 1993).

A BAR licensed Attorney has an immediate, major conflict of interest, which both he and the courts ignore and do not disclose, even though they are both legal and moral duty to inform an accused of this conflict:

First duty not to client, (emphasis added) "counsel must remember that they too, are officers of the court, administrators of justice, oath-bound servants of society; that their first duty is not to their clients, as many suppose, but is to the administration of justice; that their clients success is wholly subordinate; (emphasis added) **U.S. v. Frank**, 53 F.2d 128, 129, reversed on other grounds; **U.S. v. Loughlin**, 57 F.2d 1080, reversed on other grounds; **Pearse v. U.S.**, 59 F.2d 518; **In re Kelly**, 243 F. 696, 705.

In case of conflict between attorney's duty to client and that to court, his duty to the court must prevail. **State v. Barto**, 232 N.W. 553, 202 Wis. 329.

4·676

Because of this conflict of interest, and not having a release (signed consent), A *BAR* licensed Attorney is not allowed to inform the accused that he can make a "special appearance," "in propria persona, making a plea of: "*I plea in bar coram non judice*."" This plea would be all that is needed to stop this alleged court dead. Nor is the *BAR* licensed Attorney allowed to inform the accused about the several defects in the indictment, because neither the court or the "government" will give written consent (release). The fact that the Attorney is a government agent, with no written consent (release) , he or she can neither inform the accused, or, compromise the government's case. It is the legal and moral duty of both the attorney and the court to inform the accused. If the Attorney is refused consent to inform the accused, it is his legal and moral duty to refuse to "represent" the accused. **U.S. v. Tweel**, 550 F.2d 297, 299—300, has this to say about such silence:

"Silence can only be equated with fraud when there is a legal or moral duty to speak,"

While the Supreme Court says:

Reversal mandated is prejudice is proven on attorney-client relationship. **U.S. v. Morrison**, 449 U.S. 361, 66 L.Ed.2d 564, 101 S.Ct. 665 (1981)

By the words of the courts and the AMERICAN BAR ASSOCIATION, extreme prejudice exists, because, without a written consent (release) from both the courts and the government, a claim of "representation of the accused" is a major fraud, because a government agent is making that claim, while making sure the government's claim is not compromised, by hindering, impeding and obstructing discovery of "**Brady**" and "**Jencks**" material and/or submission to the "court" of exculpatory evidence and/or evidence which would impeach police, prosecutors or witnesses.

There can be no greater prejudice than when you have a government spy controlling acquisition of evidence, submission of evidence and presenting issues and arguments under

$5 \, 0 \, 7 \, 6$

the guise of "representation." This government spy's purpose is proven by the U.S. Attorney Manual (USAM) Title 6-1287, which in part provides:

> The entry of judgment alone does not create a judgment lien. A judgment lien comes into existence only when a certified copy of the abstract of the judgment is properly filed, (28 USC § 3201, formerly 28 USC § 1962). Accordingly, a trial attorney must take the steps necessary to obtain the judgment lien. An abstract of the judgment form, cover letter to the U.S. Attorney, and instructions are attached as exhibit 10.

If an accused is prosecuted by a U.S. Attorney, why would a U.S. Attorney need a <u>trial attorney</u> to provide an abstract of the judgment form, cover letter (and just what is contained in that cover letter), and why would such U.S. Attorney need "<u>instructions</u>"? Obviously, there numerous reasons for concealment of these things in "*Talon and Lions*," because it contains both Brady and Jencks material, which would require the release of the accused. The Government uses what it calls a "<u>**superlien**</u>" to "<u>**forfeit the person**</u>," <u>along with all substantial and insubstantial personal rights "**from the time of the alleged commission of the alleged crime**"</u>, in a process which was outlawed by the first Congress, because it is a "**Bill of Attainder**". The Legislative History of the "**Organized Crime Control Act and Title III of the Comprehensive Drug Abuse Prevention and Control Act of 1970**", shows at page 4, shows the "**super**" **judgment lien**, while at pages 81-82, which contains foot notes 174-185, provides:

> At common law, a person convicted of treason and certain other felonies automatically forfeited to the crown his personal goods and chattels. [174] Furthermore, when a person had been attainted [175] for an act of high treason [176] or outlawry [177] all his interests in real property held at the time of the offense or acquired since that time were forfeited to the crown. According to *Blackstone*, the rationale for criminal forfeiture was that:

> [H]e who hath thus violated the fundamental principles of government, and broke his part of the original contract between king and people, hath abandoned his connection with society; and hath no longer any right to those advantages, which before belong to him purely as a member of the community; among which social property to others is one of the chief. Such forfeitures moreover, whereby his posterity must suffer as well as himself, will help to restrain a man, not only by the sense of his duty, and dread of personal punishment, but also by his passions and natural affections.

The footnotes and the comments immediately after the above make it abundantly clear

EXHIBIT (C)

Case: 1:19-cv-00455 Document #: 12 Filed: 04/10/19 Page 28 of 36 PageID #:210

IN THE APPELLATE COURT OF THE STATE OF ILLINOIS
FIRST JUDICIAL DISTRICT
NO: 1-18-1014

**F I L E D**

**APPELLATE COURT 1ˢᵗ DIST.**

JUL 0 9 2018

**THOMAS D. PALELLA**
**CLERK**

FABIAN SANTIAGO, PETITIONER/APPELLANT

   Vs.

People for the State of Il., Respondent/Appellees

Appealed from the Cir. Court of Cook County Il.

Case No: 93-CR-7368

Judge, Nicholas R. Ford

---

APPELLANTS MOTION REQUESTING TO PROCEED PRO-SE WITHIN LITIGATION

Now comes the Appellant, FABIAN SANTIAGO, pro-se & moves before the court with a request to grant this instant motion to proceed pro-se. In support thereof, the appellant states as follows:

1.) The appellant within this cause of action has filed a timely notice of appeal, a docketing statement before the appellate court, & a motion before the circuit court requesting a copy of the court proceedings/transcripts without cost taxed against the appellant. The appellate court has recently granted/allowed the appellant to proceed with said appeal, & has in fact appointed the appellant counsel for this particular litigation, & the appellant is most certainly grateful unto the court for appointing the appellant counsel, however, the appellant believes that the issues/matters before the court are quite straight-forward, & the case law clearly established as to warrent the appellant immediate relief from the court, & for these reasons, the appellant would prefer to undertake this cause of action pro-se. In fact, the appellant has [already] prepared a brief pertaining to the controversies before the court, & the appellant believes that this cause of action can in fact be expedited before the court, barring any unreasonable & repeated request for extentions of time to respond by the state.

1 of 2

EXHIBIT (D)

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,      )
    Plaintiff-Appellee,      )
                          )
                          )
           v.                  )     No. 1-18-1014
                          )
FABIAN SANTIAGO,      )
    Defendant-Appellant.      )

## ORDER

    This cause coming to be heard on defendant-appellant's Motion Requesting to Proceed Pro-Se Within Litigation, and the Court being advised in the premises;

    **IT IS HEREBY ORDERED** that defendant-appellant's Motion to Proceed Pro Se is ~~GRANTED~~ / DENIED.

Enter:

_____
Justice

_____
Justice

_____
Justice

**ORDER ENTERED**

JUL 2 4 2018

APPELLATE COURT, FIRST DISTRICT

EXHIBIT (E)

IN THE APPELLATE COURT FOR THE STATE OF ILLINOIS
FIRST JUDICIAL DISTRICT

No: _____1-18-1014_____

# F I L E D

**APPELLATE COURT 1ST DIST.**

SEP 1 4 2018

## THOMAS D. PALELLA
### CLERK

FABIAN SANTIAGO, Petitioner/Appellant

Vs.

People for the State of Il., Respondent/Appellee

Appealed from the Cir. Court, Cook County., Il.

Case No: 93-CR-7368

Judge, Nicholas R. Ford

## APPELLANTS OBJECTION FOR THE DENYAL TO PROCEED PRO-SE WITHIN ACTION

Now comes the Appellant, FABIAN SANTIAGO, pro-se & moves before the court with this instant objection to the courts denyal allowing the Appellant to move before the court pro-se, & request that the court grant this instant objection. In support thereof, The Appellant states as follows:

1.) The Appellant within this cause of action has recently moved before the court with a motion to proceed pro-se before the court, which was denied by the appellate court upon the date : July 25th, 2018. The Appellant did not become in receipt of the courts order until: Saturday, August 4th, 2018, & the Appellant moved immediately before the office of the State Appellate Defender (sic), requesting that said office immediately submit this instant objection before the court. Any delay in the processing or filing of this instant objection is certainly not due to the appellants own culpable negligence, but rather due to the incredible bureaucracy which is the appellate court process, which refuses to allow litigant's to even file motions before the court seeking to proceed pro-se, which in no way shape or form constitutes hybrid representation. any litigant wishing to proceed pro-se should unquestionably be allowed to issue such a filing without proceeding first (1st) via the Appellate Defenders office.

1 of 3

2.) The Appellant within this cause of action NEVER REQUESTED & DAMN SURE DOESNT WISH FOR THE OFFICE OF THE STATE APPELLATE DEFENDER TO REPRESENT (SIC) THE APPELLANT. The State Appellate Defenders office is renown for waiving & defaulting upon critical claims of incarcerated individuals, & the Appellant doesnt intend on being sidelined while the Appellate Defenders Office refuses to raise critical issues which warrent the Appellants immediate release from the IDOC. Furthermore, the attorneys of the State Appellate Defenders Office - are officers of the court, & thereby agents of the government, therefore, Appellate Counsels representation is nothing more than a fraud & conflict of interest. The appellant is entitled to conflict-free representation as a matter of law, Please see: Garcia Vs. Burnell, 33 F.3d 1193 (9th Cir. 1994).

3.) Unless Counsel from the Il. State Office of the Appellate defender agrees to move before the court making a special appearance, "in propria persona", & making a plea of: "I PLEA IN BAR CORAM NON JUDICE". Theres no way in Hell that the Appellant within this cause of action will willingly & consentually except such a fake, & fraud Representation. The U.S. SUPREME COURT has made it well established law that, any litigant (even thoes incarcerated) have a RIGHT to proceed PRO-SE. The appellant is not requesting any personal favors from the appellate court, but rather that the appellate court recognize & affirm the Appellants RIGHT to proceed PRO-SE within this cause of action. For the appellate court judges whom denied the Appellants motion requesting to proceed pro-se not to have realized that the Appellant has a RIGHT to execute this litigation PRO-SE, demonstrates that such judges are either grossly & shockingly incompetent (or) so profoundly corrupt that there are no RIGHTS of the Apellant that the court recognizes under any set of circumstances, & in such a case, the Appellants appeal itself is a fraud, & has been predetermined by such judges.

4.) If the appellate court has a predisposition to this case, & already has every intention of robing this Appellant of the relief in which the Appellant is entitled to as a matter of law, then the appellate court should render such a decision while the Appellant proceeds pro-se within this litigation, as opposed to framing & forcing the Appellant to except counsel (with a conflict of interest), only to ultimately deny such relief @ the conclusion of this particular litigation. This Appellant has lost a quarter century of his life contending a homicide conviction in which the Appellant was arrested for @ the age of sixteen (16) years old. Theres no way in this god damn world that the Appellant should even be incarcerated @ this time - having lost two (2) & a half decades of the Appellants life, let alone contending with an inherently racist & corrupt panel of judges whom refuse to even recognize one (1) of the Appellants most basic & fundamental RIGHTS, to proceed pro-se in this cause of action.

5.) If the panel of appellate court judges, whom are fully aware that the Appellant has a RIGHT to proceed pro-se, refuse to even allow the Appellant to exercise this most mundain of RIGHTS (sic), then how is it possible for the Appellant to receive a verdict of relief, in which the Appellant is entitled to as a matter of law, when the panel of judges presiding over this cause of action refuse to follow the very laws they (judges) are oath bound to uphold ? Clearly the judiciary makes & breaks the laws as they (judges) see fit, as oppose to comporting with any statutory provisions or implementing anything remotely resembling justice (sic) - for if there were any justice every single State & Federal judge within the U.S. would be criminally prosecuted for not simply colaberating with the prosecution in violating the rights of the accused, in order to secure criminal convictions, but for the human rights abuses & crimes against humanity that detainees are subjected to every single day within the god forsaken shitholes/prisons that the State maintains as torture chambers.

6.) The Appellant has known individuals that have been convicted of kidnapping childeren, raping & murdering such childeren - whom have spent less time incarcerated than the Appellant. The Appellant has no interest in the Appellate Court wasting any further time or violating the Appellants rights (sic). If the panel of appellate court judges does not rectify this egregious violation of the Appellants right to proceed pro-se, then this Appellant will most certainly be filing a formal complaint with the Il. State Judicial Inquiry Board, outlining the level of arogence & abuse of authority by said judges. The actions of the panel of judges upon the appellate court are a testiment to judicial tyranny & should stand as a testiment to the fact that the verdict in: Dred Scott Vs. Sanford, 60 U.S. 393 (1857), & its application, are very much alive & well in practice - as opposed to the illusion of Black, Hispanic, & the indigent alike having any rights before a court of the [a]merican judicial process.

Wherefore, The Appellant moves before the court with this instant objection, & demands to proceed pro-se within this cause of action, & seeks the discharge of the Il. State Appellate Court Defenders Office.

/s/ _____,

Without Prejudice, Unified Commercial Code, 1-308
MR.FABIAN SANTIAGO. #B-79716
600 South. Linwood Road
Po Box 1700
Galesburg, Il. 61402

3 of 3

EXHIBIT (F)

1-18-1014

## IN THE APPELLATE COURT OF ILLINOIS
### FIRST JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| FABIAN SANTIAGO, | ) |
| Defendant-Appellant. | ) |

### ORDER

This cause coming to be heard on defendant-appellant's Motion to Reconsider the Denial of the Motion to Proceed *Pro Se*, defendant-appellant being currently represented by the Office of the State Appellate Defender, and the Court being advised in the premises;

**IT IS HEREBY ORDERED** that defendant-appellant's Motion to Reconsider the Denial of the Motion to Proceed *Pro Se* is **GRANTED / DENIED**.

Enter:

_____
Justice

ORDER ENTERED

SEP 2 4 2018

APPELLATE COURT FIRST DISTRICT

_____
Justice

_____
Justice